# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**David Lawrence Dixon,**
**Petitioner Below, Petitioner**

**vs) No. 18-0097** (McDowell County 05-C-93)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**December 20, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner David Lawrence Dixon, pro se, appeals the January 18, 2018, order of the Circuit Court of McDowell County denying his second petition for a writ of habeas corpus and its April 16, 2018, order reaffirming the denial of the habeas petition after a remand following the discovery of the recording of the grand jury proceeding in petitioner's criminal case. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[1] by counsel Shannon Frederick Kiser, filed a summary response in support of the circuit court's orders.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 1997, petitioner was convicted in the Circuit Court of McDowell County following a jury trial of first-degree murder, first-degree sexual assault, and abduction. The circuit court sentenced petitioner to a life term of incarceration without the possibility of parole for his

---

[1]Since the filing of the appeal in this case, the superintendent at Mt. Olive Correctional Complex has changed, and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W. Va. Code § 15A-5-3.

1

murder conviction and a consecutive term of three to ten years of incarceration for his abduction conviction.[2]

After being allowed to withdraw a prior appeal, petitioner appealed his convictions on June 2, 1998. By order entered on March 9, 1999, this Court refused that appeal. On February 4, 2002, petitioner filed a petition for a writ of habeas corpus, which the circuit court denied on May 16, 2002. On June 25, 2002, petitioner filed an appeal from the denial of that habeas petition. By order entered on January 17, 2003, this Court refused that appeal.

Petitioner filed a second habeas petition on April 8, 2005, which the circuit court denied by order entered on May 11, 2005. Following petitioner's appeal of the denial of that habeas petition, this Court reversed the circuit court's May 11, 2005, order on November 29, 2005, and remanded the case to the circuit court for the appointment of counsel and an evidentiary hearing. From December of 2005 to March of 2016, three different attorneys were appointed as habeas counsel but were then allowed to withdraw at petitioner's request. Petitioner also asked that he be permitted to represent himself, which request the circuit court granted by order entered on March 29, 2016. The circuit court held the evidentiary hearing on December 28, 2016. On January 18, 2018, the circuit court entered a comprehensive order rejecting the forty-one grounds for relief set forth in petitioner's habeas petition and/or his *Losh* checklist.[3] Petitioner filed an appeal of the circuit court's January 18, 2018, order on February 8, 2018.

However, on or about February 15, 2018, the recording of the February 28, 1996, grand jury proceeding that petitioner previously requested was discovered. Accordingly, the circuit court directed the preparation of the transcript by order entered on February 15, 2018, and this Court remanded the case for further proceedings by order entered on February 26, 2018. After remand, by order entered on February 28, 2018, the circuit court allowed the parties an opportunity for further briefing. While respondent did not file a brief in response to the preparation of the grand jury transcript, petitioner filed a brief on March 26, 2018. By order entered on April 16, 2018, the circuit court found that there was no reason to modify the January 18, 2018, order and reaffirmed its denial of petitioner's habeas petition. Petitioner now appeals both of the circuit court's orders.

In Syllabus Point 1 of *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016), we held:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions

---

[2]The State tried petitioner under a theory of felony murder; therefore, the circuit court did not sentence petitioner for his sexual assault conviction pursuant to Syllabus Point 8 of *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983).

[3]In *Losh v. McKenzie*, 166 W. Va. 762, 768-70, 277 S.E.2d 606, 611-12 (1981), we compiled a nonexclusive list of potential grounds that a circuit court should address with a habeas petitioner as to whether each ground was being either waived or raised in the proceeding.

of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

*See also* Syl. Pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975) (holding that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong").

On appeal, petitioner argues that the circuit court erred in denying his habeas petition. Respondent counters that petitioner's arguments are frivolous and/or as comprising an incoherent "amalgamation of case law and procedural rules." We decipher petitioner's primary arguments as being: (1) the December 28, 2016, hearing did not constitute the evidentiary hearing to which petitioner was entitled under this Court's November 29, 2005, order; (2) the circuit court failed to give petitioner an adequate opportunity to develop the record; and (3) the circuit court failed to set forth findings of fact and conclusions of law sufficient to permit meaningful appellate review. Based on our review of the circuit court's January 18, 2018, and April 16, 2018, orders, we find that the findings and conclusions contained therein were sufficient to deny petitioner's habeas petition. We further concur with respondent that, for the reasons set forth in the April 16, 2018, order, the circuit court was not required to hold an additional evidentiary hearing following the discovery of the recording of the grand jury proceeding in petitioner's criminal case.

Having reviewed the circuit court's January 18, 2018, "Comprehensive Order Denying Writ of Habeas Corpus Following Omnibus Evidentiary Hearing" and its April 16, 2018, "Supplemental Order Following Comprehensive Order Denying Writ of Habeas Corpus Following Omnibus Evidentiary Hearing," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions, which we find address petitioner's assignments of error. The Clerk is directed to attach a copy of each of those orders to this memorandum decision. Accordingly, we conclude that the circuit court did not abuse its discretion in denying habeas relief.

For the foregoing reasons, we affirm the circuit court's January 18, 2018, order denying petitioner's second petition for a writ of habeas corpus and its April 16, 2018, order reaffirming the denial of the habeas petition after a remand following the discovery of the recording of the February 28, 1996, grand jury proceeding.

Affirmed.

**ISSUED**: December 20, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

18-0097

COPY

F I L E D

JAN 19 2018

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

F I L E D

JAN 19 2018

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE CIRCUIT COURT OF MCDOWELL COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, Ex Rel.,
DAVID LAWRENCE DIXON, PRO SE,
    **Petitioner,**

v.
    Civil Action No.: 05-C-93

DAVID BALLARD, WARDEN
MOUNT OLIVE CORRECTIONAL COMPLEX,
    **Respondent.**
    Judge Murensky

## COMPREHENSIVE ORDER DENYING WRIT OF HABEAS CORPUS FOLLOWING OMNIBUS EVIDENTIARY HEARING

On the 23rd day of March, 2017, came Petitioner, in person, *pro se*, and also came Respondent by Emily K. Miller, Assistant Prosecuting Attorney for McDowell County, West Virginia, for an omnibus evidentiary hearing on the merits of Petitioner's Petition for a Writ of Habeas Corpus. After reviewing the testimony of the omnibus evidentiary hearing, the testimony and evidence presented in Petitioner's underlying criminal trial, the case file, and the pertinent legal authorities, the Court has concluded that Petitioner has failed to establish a basis for the relief requested in his Petition for a Writ of Habeas Corpus for the following reasons:

### FINDINGS OF FACT

Petitioner was indicted by the February 1996 Term of the Grand Jury for McDowell County in Felony No. 96-F-13 for first degree murder, first degree sexual assault and abduction of Bertha Hodge. Petitioner was tried before a jury in the Circuit Court of McDowell County in April 1997. The jury found the Petitioner guilty of all three counts. Upon the jury's verdict, the Court sentenced the Petitioner to life without mercy for his crime of felony murder, as well as a three to ten year sentence for the abduction conviction, to be served consecutively.

Petitioner made two separate appeals to the West Virginia Supreme Court of Appeals. Appellate counsel for Petitioner filed an *Anders* brief in lieu of a Petition for Appeal, but failed

1

to follow the *Anders* procedure. Counsel was permitted to withdraw and the West Virginia Supreme Court refused the appeal by order entered November 21, 1997. Petitioner's direct appeal filed on June 2, 2008 asserted the Circuit Court erred in denying his motion for a change of venue; that the Prosecutor improperly commented in his closing argument about Defendant's silence and/or failure to testify at trial; and that the Prosecutor made improper, prejudicial pleas to the jury during his closing argument. The petition for appeal was refused by the West Virginia Supreme Court by order entered March 9, 1999. Petitioner further filed a *pro se* Petition for a Writ of Habeas Corpus with the West Virginia Supreme Court on March 26, 1998 relating to the admissibility and weight to be given to the State's DNA evidence. The West Virginia Supreme Court refused Petitioner's Petition by order entered January 28, 1999.

On February 4, 2002, Petitioner filed a *pro se* petition for post-conviction habeas corpus relief, which was designated as McDowell County Civil Action No. 02-C-34. The petition alleged, *inter alia*, the State's DNA evidence was insufficient to sustain a conviction. Petitioner's petition was denied by this Court by order entered May 16, 2002. Petitioner appealed this Court's order, which was refused by the West Virginia Supreme Court by order entered January 17, 2003.

Petitioner filed the instant habeas corpus petition on April 8, 2005, which was denied by this Court by order entered May 11, 2005 after conducting an initial review. Subsequently, the West Virginia Supreme Court remanded the matter back to this Court for the appointment of counsel and to conduct an omnibus evidentiary hearing by order entered November 29, 2005.

This Court appointed the first of several competent and licensed attorneys to represent Petitioner by order entered December 21, 2005.[1] The Court ultimately allowed Petitioner to

---

[1] Since this matter was remanded to this Court, three different attorneys have been appointed to represent Petitioner. Each attorney has been permitted to withdraw at the request of Petitioner.

2

proceed *pro se* pursuant to Petitioner's request by order entered March 29, 2016. An evidentiary hearing was scheduled by order entered on December 28, 2016. The Court provided Petitioner with a *Losh* list by letter dated February 14, 2017. Petitioner filed a proposed *Losh* list on February 23, 2017. Respondent filed a response to Petitioner's habeas corpus petition on March 21, 2017.

During the evidentiary hearing, Petitioner requested the Court take judicial notice of the trial transcript in Petitioner's underlying criminal case, to which Respondent did not object. The Court admitted Petitioner's entire underlying criminal file into evidence. With this understanding, Petitioner stated that it would be necessary to take the testimony of only one of his subpoenaed witnesses, Brian Cochran.[2] The Court then took the sworn testimony of Mr. Cochran. Respondent presented no witnesses. The parties were then given the opportunity to present argument regarding their respective positions. The Court further gave Petitioner an opportunity to raise any issues that were not included in his habeas corpus petition and subsequent motions filed prior to the hearing.

In his petition, Mr. Dixon seeks post-conviction DNA testing of his own DNA, arguing the DNA evidence presented at trial was false and insufficient to sustain a conviction. The petition further argues Petitioner's conviction was based on the perjured testimony from troopers from the West Virginia State Police. At the evidentiary hearing, Petitioner further asserted members of the grand jury were prejudiced against him because several jurors were allegedly punished for appearing late. Petitioner then made a request for the Grand Jury transcripts and polling sheets from the regular term of the February 1996 term of Court.

---

[2] Petitioner subpoenaed the following people to testify at the omnibus evidentiary hearing: Brian Cochran, Darren Frances, and Sidney Bell. At the time of Petitioner's trial and conviction, Brian Cochran was a State Policeman stationed in McDowell County, Darren Frances was a Forensic Examiner employed with the West Virginia State Police, and Sidney Bell was the Prosecuting Attorney of McDowell County.

3

At the conclusion of the hearing, the Court informed the parties that it would like to receive briefs in support of their positions. The Court initially gave Petitioner sixty days to file a brief, but such deadline was extended pursuant to Petitioner's request. Petitioner was given seventy-five (75) days to file his brief. Respondent was given time to respond and Petitioner in turn was given additional time to respond to Respondent's brief. As of the date of this Order, Petitioner has yet to file a brief. Rather, Petitioner filed a *Motion to Unseal McDowell County Grand Jury Files to Obtain Grand Jury Polling Sheets* on May 3, 2017 and *a Pre-trial Motion for Default Judgment* on June 12, 2017. Both motions are not properly before the Court, as they were filed after the evidentiary hearing on the merits of Petitioner's petition and therefore inconsistent with the status of this case. Moreover, the Court informed Petitioner during the evidentiary hearing the Grand Jury information he seeks does not exist.

## CONCLUSIONS OF LAW

Jurisdiction and venue are appropriately in the Circuit Court of McDowell County, pursuant to Rule 3 of the *Rules Governing Post-Conviction Habeas Corpus Proceedings* and *West Virginia Code* § 53-4A-1. Petitioner was convicted and sentenced by the Circuit Court of McDowell County, West Virginia.

*West Virginia Code* § 53-4A-1 provides for post-conviction habeas relief for "[a]ny person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State or both."

The contentions and the grounds in fact or law must "have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence,

4

or in a proceeding or proceedings in a prior petition or petitions under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence." *W. Va. Code* § 53-4A-1.

"Habeas corpus proceedings are civil proceedings. The post-conviction habeas corpus procedure provided for by Chapter 85, Acts of the Legislature, Regular Session, 1967, is expressly stated therein to be 'civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case.'" *State ex rel. Harrison v. Coiner*, 154 W. Va. 467, 476 (1970). A circuit court having jurisdiction over habeas corpus proceedings has broad discretion in dealing with habeas corpus allegations. *Markley v. Coleman*, 215 W. Va. 729, 733 (2004). The burden is on the petitioner to prove his claims by a preponderance of the evidence. Syl. Pt. 1, *State ex rel. Scott v. Boles*, 150 W.Va. 453 (1966).

The first of three threshold tests applied to post-conviction habeas corpus claims requires Petitioner to allege the denial of a constitutional right. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129 (1979). The Petition in the instant proceeding satisfies this threshold test by alleging a denial of due process rights based on a conviction resulting from false evidence; and that Petitioner did not receive a fair trial; alleging the violation of Petitioner's Fifth Amendment rights due to the Prosecutor's inappropriate comments during closing argument.

The second and third threshold tests applied to Petitioner's claims require a determination of whether the claims have been previously and finally adjudicated or waived, and thus barred by *West Virginia Code* § 53-4A-1(b)(c). Petitioner previously filed two appeals to the West Virginia Supreme Court, along with a petition for habeas corpus, all of which were refused. Inasmuch as

5

the West Virginia Supreme Court merely refused to docket Petitioner's appeals and did not specifically address the merits of Petitioner's claims, the Court declines to give preclusive effect to the refusals of Petitioner's appeals. *Smith v. Hedrick*, 181 W. Va. 394 (1989).

Further, in light of the West Virginia Supreme Court's November 29, 2005 order remanding this case back to this Court to conduct an omnibus evidentiary hearing, the Court declines to attach preclusive effect to its May 16, 2002 order entered in McDowell Co. Civil Action No. 02-C-34 and the January 7, 2003 West Virginia Supreme Court order refusing Petitioner's appeal of the same. This Court's May 16, 2002 order was based in part on the West Virginia Supreme Court's refusal of Petitioner's appeals.

Thus, the Court **FINDS** that Petitioner's claims are not barred by *West Virginia Code* § 53-4A-1(b). With these three necessary threshold determinations resolved, the Court proceeds to consider the merits of Petitioner's claims.

### DNA Evidence

Petitioner asserts the State's DNA evidence introduced at trial was unreliable and therefore inadmissible under the factors articulated in *State v. Clawson*, 165 W. Va. 588 (1980). Petitioner's *Losh* List further alleges there were chain of custody violations in the State's evidence, but Petitioner does not offer any further detail. *Clawson* was decided prior to the adoption of Rule 702 of the *West Virginia Rules of Evidence*. *Wilt v. Buracker*, 191 W. Va. 39, 43-44 (1993). The *Wilt* Court held that:

> *Daubert*'s analysis of Federal Rule 702 should be followed in analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence. The trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can be and have been tested;

6

(b) whether the scientific theory has been subjected to peer review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community.

191 W. Va. at 46. Trial counsel did not object to the admissibility of the State's DNA expert's conclusions. However, Ronald D. Hassan, Petitioner's co-trial counsel, filed a Motion to Set Aside The Verdict And Order A New Trail on April 11, 1997. The Motion argues, *inter alia*, that the chain of custody of the serological DNA evidence was broken when certain hair samples taken from Petitioner at Welch Emergency Hospital were lost. The Motion argues that as a result of this, the reliability of the testing procedures done by the State's DNA expert should be called into question because of the potential for contamination of the serological evidence in the broken chain of custody.

The Motion further argues the testing procedures and analysis done by Trooper Francis, who testified for the State, are unreliable inasmuch and that Trooper Francis failed to follow standard practices and procedures called for in the West Virginia Department of Public Safety DNA Analysis Manuals, and that in other instances, he used procedures that are not called for in the Manuals currently in use by Forensic Personnel at the State Police Crime Lab..

The Motion further argues the calculations testified to by the State's DNA expert concerning the frequency of the appearance of DNA characteristics that he examined in this case are not supported by the National Research Council and The Working Groups on DNA Analysis Methods, the Guidelines of which the State's DNA expert testified he followed in computing the calculations.

A hearing was held on Petitioner's Motion before the presiding trial judge on April 14, 1997. The trial judge found the specific issues raised by counsel concerning the State's DNA

7

evidence were raised during the vigorous cross-examination of the State's DNA expert and in the closing arguments to the jury, but that the jury found the testimony of the State's expert witness to be reliable.

The presiding trial judge further found DNA evidence is recognized in the State of West Virginia as being scientifically valid and evidence of a properly conducted DNA analysis is admissible in the courts of this state.

This Court finds no error in the presiding judge's ruling. The record reflects no chain of custody violation regarding the State's DNA evidence. Trial Transcript, April 3, 1997, pp. 144-46, 148-52, 205, 210-12, 220, 222, 242-48. The hair samples taken from Petitioner were not introduced at trial. See Trial Transcript, April 3, 1997, pp. 142-43, 179. Moreover, Petitioner's trial counsel retained their own DNA expert, Anita Mathews, and opted not to call her as a witness to refute the State's DNA expert. Indeed, the record reflects that trial counsel purchased tickets to fly to North Carolina to meet with Ms. Mathews for a period of four hours on December 20, 1996. Itemized Statement of Legal Services, filed May 21, 1997.

Mr. Flinchum and Mr. Hassan further met with Ms. Mathews on April 1, 1997, the first day of Petitioner's criminal trial, for a period of two hours. Itemized Statement of Legal Services, filed May 21, 1997.

Moreover, Ms. Mathews was present in the courtroom during the State's DNA expert's testimony. Trial Transcript, April 3, 1997, pp. 195-96. Indeed, the following exchange took place on April 3, 1997, the third day of Petitioner's trial:

> The Court: Now, let the record also reflect, also, that we do now have in the Court Room for the rest of today's trial purposes as part of the --- what [Petitioner's trial counsel] has labeled, the *Defense Team*, an individual who I understand to be an expert that [Petitioner's trial counsel] will now, please, identify for us. Or if the expert wants to identify herself, and counsel wants that, that would be fine as well?

8.

Trial Counsel: Your Honor, her name is Anita Matthews and she is a Molecular Biologist from Research Triangle Park in North Carolina. And she's employed by Laboratory Corporation of America.

The Court: Is that correct, Ma'am?

Ms. Matthews: Yes, it is.

The Court: You have been referred to as a DNA expert for defense team purposes. Is that a fair characterization of your occupation and abilities?

Ms. Matthews: Yes, sir.

The Court: Of course, you'll be allowed to sit in with the defendant's — defendant and his counsel and observe, listen to the testimony, and so forth in this case. So, welcome to the Court Room.

Trial Transcript, April 3, 1997, pp. 195-96. The record reflects the State then proceeded to call Lewis Tepoel, M.D., followed by Trooper Darren Francis, the State's DNA expert. Trial Transcript, April 3, 1997, p. 213. Ms. Mathews obviously heard Trooper Francis' testimony and was clearly available to testify for Petitioner. It is safe to presume that Ms. Mathews' testimony would not have been favorable to Petitioner's defense, but rather only confirmed the State's expert testimony.

Petitioner further asserts that the State's DNA evidence fails to identify him as the person who committed against the victim, Mrs. Hodge. Petitioner appears to argue he has the right to post-conviction DNA testing because his conviction falls within the time period of 1979 and 1999 and because a serologist other than Fred Zain offered evidence against him. *See In the Matter of Renewed Investigation of the State Police Crime Laboratory*, 219 W.Va. 408 (2006)(hereinafter, "*Zain III*").

Petitioner further argues he meets the requirements of *West Virginia Code* § 15-2B-14, which addresses post-conviction DNA testing. Petitioner essentially argues post-conviction DNA

9

testing will establish he was not the source of the semen found on Mrs. Hodge. In *State ex rel. Burdette v. Zakaib*, the West Virginia Supreme Court held *West Virginia Code* § 15–2B–14 provides a defendant the absolute right to <u>ask</u> for DNA testing; however, it does not provide a defendant the absolute right to have DNA testing conducted. Syl. Pt. 7, 224 W. Va. 325 (2009). The *Burdette* Court further held *Zain III* does not afford every petitioner with alleged serology issues the right to additional DNA testing. "In order to have the right to additional DNA testing, the evidence sought to be tested must likely produce an opposite result, if a new trial were to occur, and the evidence cannot be such that its purpose is merely to impeach or discredit a State's witness." Syl. Pt. 6, *Burdette*, 224 W. Va. 325. Indeed, "[a] defendant simply cannot make unsupported and blanket allegations and expect a circuit court to grant him a new trial." *Burdette*, 224 W. Va. at 332.

> Before a petitioner is entitled to post-conviction DNA testing the petitioner must file a motion for post-conviction DNA testing in the circuit court that entered the judgment of conviction that the petitioner challenges. In the motion the petitioner must allege, and subsequently prove by a preponderance of the evidence, that: 1) the petitioner is incarcerated; 2) the material upon which the petitioner seeks testing exists and is available; 3) the material to be tested is in a condition that would permit DNA; 4) a sufficient chain of custody of the material to be tested exists to establish such material has not been substituted, tampered with, replaced, or altered in any material respect; 5) identity was a significant issue at trial; and, 6) a DNA test result excluding the petitioner as being the genetic donor of the tested material would be outcome determinative in proving the petitioner not guilty of the offense(s) for which the petitioner was convicted. Finally, the petitioner's theory supporting the request for post-conviction DNA testing may not be inconsistent with the trial defenses.

*State ex rel. Richey v. Hill*, 216 W. Va. 155, 166 (2004).

Additionally, *West Virginia Code* § 15–2B–14(c) requires Petitioner's motion seeking post-conviction DNA testing to (1) explain why the identity of the perpetrator was, or should have been, a significant issue in the case; (2) explain, in light of all the evidence, how the

10

requested DNA testing would raise a reasonable probability the convicted person's verdict or sentence would be more favorable if the results of DNA testing had been available at the time of conviction; (3) make every reasonable attempt to identify both the evidence that should be tested and the specific type of DNA testing sought; (4) reveal the results of any DNA or other biological testing previously conducted by either the prosecution or defense, if known; and (5) state whether any motion for testing under this section has been filed previously and the results of that motion, if known.

*West Virginia Code* § 15–2B–14(f) provides:

The court shall grant the motion for DNA testing if it determines all of the following have been established: (1) The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion; (2) The evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect; (3) The identity of the perpetrator of the crime was, or should have been, a significant issue in the case; (4) The convicted person has made a prima facie showing that the evidence sought for testing is material to the issue of the convicted person's identity as the perpetrator of or accomplice to, the crime, special circumstance, or enhancement allegation resulting in the conviction or sentence; (5) The requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if DNA testing results had been available at the time of conviction. The court in its discretion may consider any evidence regardless of whether it was introduced at trial; (6) The evidence sought for testing meets either of the following conditions: (A) The evidence was not previously tested; (B) The evidence was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results; (7) The testing requested employs a method generally accepted within the relevant scientific community; (8) The evidence or the presently desired method of testing DNA were not available to the defendant at the time of trial or a court has found ineffective assistance of counsel at the trial court level; (9) The motion is not made solely for the purpose of delay.

Additionally, *West Virginia Code* § 15–2B–14(g) provides if this Court grants Petitioner's motion for post-conviction DNA testing, the Court order must identify the specific

11

evidence to be tested, the DNA technology to be used and that testing be conducted by a DNA forensic laboratory in West Virginia.

The Court is mindful of Petitioner's *pro se* status. However, Petitioner has failed to show, in light of all the evidence, how the post-conviction DNA testing would raise a reasonable probability Petitioner's verdict would have been more favorable or produced an opposite result of the State's DNA evidence demonstrating Petitioner was the source of the semen found on Mrs. Hodge, in accordance with *Burdette* and *West Virginia Code* § 15–2B–14. Further, the Court is unable to find that the testing sought by Petitioner is reasonably more discriminating and probative of the perpetrator or have a reasonable probability of contradicting the prior DNA test results. *W. Va. Code* § 15–2B–14(f)(6). Since Petitioner did not identify the specific DNA testing sought, the Court has no information on whether it is a method generally accepted within the relevant scientific community. *W. Va. Code* § 15–2B–14(f)(7).

Petitioner's main argument appears to be West Virginia State Trooper Darren R. Francis should have continued to test Petitioner's DNA until it completely ruled him out as a suspect, as was the case with Petitioner's brother, Timothy Dixon. The transcripts of Petitioner's underlying criminal trial, which were admitted into evidence at Petitioner's request, indicate Trooper Francis testified the DNA sample was becoming weak and that additional testing would not necessarily reveal additional information. Trial Transcript, April 4, 1997, pp. 69-70, 76, 79. Indeed, Trooper Francis testified Timothy Dixon was ruled out early due to the non-matching banding patterns. Trial Transcript, April 3, 1997, p. 237.

The record indicates Trooper Francis tested Petitioner's DNA in a manner used by the analysts in the accredited West Virginia State Police Crime Laboratory, found a matching banding pattern between Petitioner and the sample collected from Mrs. Hodge, and gave a

12

scientific opinion indicating Petitioner as a match after the results were confirmed through visual and computer-aided software. Trial Transcript, April 3, 1997, pp. 219, 237-38, 265-66. Retesting the DNA would be a futile exercise, as the banding pattern of the sperm cell DNA collected from the victim matched the banding pattern of the known DNA sample provided by Petitioner. Trooper Francis indicated the odds that someone other than Petitioner was the source of sperm found on the victim would be 138,282,467 to one. Trial Transcript, April 3, 1997, pp. 240-41.

The trial transcript further indicates that Trooper Francis was subject to effective cross-examination by Petitioner's trial counsel. Trial counsel's cross-examination revealed details regarding West Virginia State Police Crime Laboratory protocol and procedure generally, as well as the precise methods of how Petitioner's DNA was compared to the sperm found on the victim.

Petitioner's Petition further states "the trial judge refused to address Petitioner's violation of his Fourth Amendment right [sic], i.e., whether Petitioner had the right to refuse the State Police request/demands for samples to be tested..." The record reflects on March 25, 1997, a few days before Petitioner's criminal trial, Petitioner filed a Motion to Suppress the use of blood he had given to Trooper Cochran at the Welch Emergency Hospital's Emergency Room. The trial court held a hearing on Petitioner's motion on March 28, 1997. Petitioner contended Trooper Cochran threatened Petitioner with arrest and threatened to have Petitioner's entire family jailed if Petitioner did not voluntarily consent to give a blood sample. Transcript of March 28, 1997 Hearing, p. 13. Trooper Cochran testified during the hearing he did not make such threats. Transcript of March 28, 1997 Hearing, p. 51.

Petitioner's Motion to Suppress raised three issues: (1) whether the blood was voluntarily given by Petitioner; (2) whether a search warrant should have been obtained; and (3) whether a

13

search warrant could have been obtained. Trooper Cochran testified he did not think Petitioner would voluntarily consent to a blood sample after he spoke with Petitioner and that he drove to the courthouse to obtain a search warrant. Transcript of March 28, 1997 Hearing, p. 51. Trooper Cochran testified while he was in the process of trying to obtain a warrant, he was surprised to receive a phone call from the Welch Emergency Hospital's Emergency Room, which informed him Petitioner and Petitioner's brother were present at the Emergency Room to give a blood sample. Transcript of March 28, 1997 Hearing, pp. 20-21. Trooper Cochran testified he then drove to the Emergency Room, where Petitioner signed a consent form. Transcript of March 28, 1997 Hearing, p. 22. Trooper Cochran testified Petitioner was also advised by the Emergency Room doctor he had the right to withhold consent to a blood sample. Transcript of March 28, 1997 Hearing, p. 22. Petitioner then consented to the blood sample. Transcript of March 28, 1997 Hearing, pp. 26-27.

Petitioner testified his mother encouraged him to give blood because he "had nothing to hide." Transcript of March 28, 1997 Hearing, p. 66. Petitioner testified: "I knew I didn't have to give nothing, but it was only the fact that the statement he made regarding my mother, I give it so he can get out of my hair and leave me alone." Transcript of March 28, 1997 Hearing, p. 69. Trooper Cochran testified at the time Petitioner gave blood, Petitioner was not handcuffed or placed under arrest and that Petitioner was free to leave. Transcript of March 28, 1997 hearing, p. 27. Petitioner's brother testified he discussed whether or not to give blood with Petitioner and at the time of making his decision to give blood, he was unaware of any threats about jailing his mother. Transcript of March 28, 1997 hearing, pp. 74-75. The presiding trial judge denied the Motion to Suppress, finding Petitioner gave his blood on his own free will. Transcript of March 28, 1997 hearing, p. 101; Order Denying Suppression Motion, dated April 18, 1997.

14

Petitioner testified he knew he did not have to give blood. Trooper Cochran denied making threats to jail Petitioner's mother. Accordingly, the Court cannot conclude the presiding trial judge's determination Petitioner voluntarily consented to give his blood was plainly wrong or clearly against the weight of the evidence given the totality of the circumstances. *State v. Buck*, 170 W. Va. 428, 431 (1982), *State v. Rickman*, 167 W. Va. 128, 132 (1981).

Based on all of the foregoing, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

### False DNA Evidence and Perjured and Misleading Testimony

Petitioner argues the State introduced false DNA test results as well as perjured and misleading testimony from the West Virginia State Police. Petitioner's allegations regarding perjured testimony are not identified as a separate ground for habeas relief. Rather, they appear to be mentioned in passing when challenging the sufficiency of the State's DNA evidence. "[I]t is a violation of due process for the State to convict a defendant based on false evidence[.]" Syl. Pt. 2, *Matter of Investigation of W. Virginia State Police Crime Lab., Serology Div.*, 190 W. Va. 321, 322 (1993). The Court presumes Petitioner meant to argue the State knew the testimony of the State's witnesses was false. *See Losh v. McKenzie*, 166 W. Va. 762, 769 (1981).

Petitioner takes on a heavy burden by alleging the State knowingly used perjured testimony. Indeed, "[i]n order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict." *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 376 (2009). All three elements must be proven in order for Petitioner to prevail.

15

Here, Petitioner may believe the State's witnesses lied and he may believe the State knew this, but he remains a long way from proving such things. Petitioner has failed to produce any evidentiary material establishing the State's witnesses testified falsely and therefore has failed to meet the test set forth in *Franklin*. "It was the role of the jury to weigh the evidence and make credibility assessments after it observed the witnesses and heard their testimony. The jury made its determination, and this Court will not second guess it[.]" *State v. Brown*, 210 W. Va. 14, 27 (2001).

Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Sufficiency of State's Evidence

Petitioner argues he "was convicted of the crimes charged without any evidence to support the contentions of the State, for the State failed to prove any of the elements of each of the crimes listed in the indictment." Essentially, Petitioner argues the State failed to establish beyond a reasonable doubt Petitioner was the one who abducted and sexually assaulted the victim, thereby causing her death. Petitioner argues the State had no other evidence to support his conviction and that his conviction was based entirely on circumstantial evidence.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. *Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.* To the extent that our prior cases are inconsistent, they are expressly overruled.

16

Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657 (1995)(emphasis added). Moreover, it is well established a verdict may be based entirely on circumstantial evidence. *Guthrie*, 194 W. Va. at 669. Here, the record shows in addition to the DNA evidence, the State introduced evidence showing Petitioner lived next door to the victim; an individual of a similar build and description of Petitioner was seen near the hedges of the victim's home in the early hours of August 17, 1995 as the victim was returning home from her regular morning walk; the victim never returned from her morning walk and was later found bound with duct tape in the freezer in the victim's home. Trial Transcript, April 2, 1997, pp. 212-13, 222-23, 231, 255; Trial Transcript, April 3, 1997, pp. 18, 76. Moreover, Stephanie Walker, Petitioner's then-significant other, testified Petitioner threw away certain objects on the night of the victim's death over a mountain and that Petitioner told her he was in possession of duct tape, which was determined to be the item that bound the victim when she was sexually assaulted. Trial Transcript, April 3, 1997, p. 77; Trial Transcript, April 4, 1997, pp. 93-99.

The Court **FINDS** and **CONCLUDES** there was a sufficient amount of evidence to sustain Petitioner's conviction even without the State's DNA evidence and that a reasonable jury could find the State had proven the essential elements of each crime beyond a reasonable doubt. Accordingly, the Court **FINDS** Petitioner has failed to meet his burden of proof as to this ground.

## Ineffective Assistance of Counsel

Petitioner appears to allege Tracy B. Lusk was ineffective for failing to request a separate DNA test. Petitioner's allegations against Mr. Lusk are not identified as a separate ground for habeas relief. Rather, they appear to be mentioned in passing when challenging the sufficiency of the State's DNA evidence. Tracy Lusk was the Chief Public Defender originally appointed to

17

represent Petitioner. He was relived pursuant to Petitioner's request approximately six months prior to trial by Order entered September 11, 1996. Mr. Lusk had no involvement in this case after his removal. Any irregularity by Mr. Lusk, if any, would have been cured by the competent representation of Petitioner's trial counsel.

Accordingly, the Court **FINDS** Petitioner has failed to meet his burden of proof as to this ground.

## Prosecutor's Alleged Improper Comments and Conduct

Petitioner asserts the Prosecutor made inappropriate comments to the jury during his closing argument on several issues, including the State's DNA evidence. The presiding trial judge gave the jury instructions on expert witness. The trial judge instructed the judge as follows:

> You should consider each expert opinion received in evidence in this case and give it such credibility and weight as you find it deserves.
>
> You may reject it, entirely, if you conclude that the reasons given in support of the opinion, are unsound. If you find that the facts upon which the expert relied are not sufficient to support the opinion, or that the facts relied upon are erroneous, you may reject the opinion.
>
> You should consider the qualifications and credibility of the expert, the methodology and process of the reasoning by which the expert supports the opinion, the process for study, observation and testing of the matter about which the expert testified, and any and all other matters and circumstances that may serve to eliminate the expert's statements, findings, conclusion, and opinion.
>
> The weight and value for you, the jury, to give to the expert's testimony and evidence is for you and you alone to determine. You are not bound to accept an expert opinion as conclusive, but you may do so if you find it is entitled to such weight.
>
> You should give the expert opinion and evidence the credibility and weight to which you, the jury, find it is entitled because you, the jury, are the sole judges of the credibility and weight to be given any and all evidence in this case whether expert evidence or otherwise.

Trial Transcript, April 7, 1997, pp. 75-76.

18

The presiding trial judge further instructed the jury that:

[t]he burden is always upon the State to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Trial Transcript, April 7, 1997, pp. 77-78.

The Prosecuting Attorney's remarks concerning the DNA, when viewed in the context of the entire trial and closing arguments, were merely a response to Petitioner's trial counsel's remarks and questions that were raised by the defense. Indeed, United States District Court Judge David A. Faber made a similar finding in Petitioner's § 2254 federal habeas action by Judgment Order entered March 5, 2004 in Civil Action No. 1:03-0376. The Court recognizes "[a] Defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953). The jury obviously found the State's DNA evidence to be credible and reliable notwithstanding the skillful cross-examination of Petitioner's trial counsel. Accordingly, the Court **FINDS** Petitioner has failed to meet his burden of proof as to this ground.

## Jury Charge

Petitioner alleges the jury should not have been instructed on felony charges, as lesser included offenses, that were not brought by the McDowell County Grand Jury. Petitioner argued at the evidentiary hearing he was not indicted with attempt to commit sexual assault or attempt to commit abduction, but rather sexual assault in the first degree and abduction of a person. Petitioner argues the instruction added additional offenses that amounted to amending the indictment. Trial counsel for Petitioner made a similar argument when he objected to the presiding trial judge's proposed jury instructions on felony murder, sexual assault in the first degree and abduction of a person. Trial Transcript, April 7, 1997, pp. 61-62.

19

An examination of the record reveals the trial judge did not amend the indictment. The record further reveals Petitioner was convicted of the three felony counts as charged in the Indictment. Petitioner mistakenly believes that providing the jury with the opportunity to find lesser included offenses is the same as amending or altering the Indictment. It is commonplace and routine to instruct the jury as to the availability of lesser included offenses, if they exist. At sentencing, Judge King conformed the verdict to law by not imposing a sentence on Count II of the Indictment because Count II was the underlying enumerated felony for which Petitioner was convicted of felony murder. *State v. Tesack*, 181 W. Va. 422 (1989).

Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

### Grand Jury Prejudice

Petitioner argued during the evidentiary hearing there were several grand jurors who were punished for being late and that such punishment resulted in prejudice towards Petitioner. It is important to note the grand jury that indicted Mr. Dixon was not convened solely to indict him. Indeed, the grand jury in question was convened for the regular term of court in February 1996 and Petitioner was only one of nineteen people indicted during that term of court.

The Grand Jury Order shows the presiding trial judge issued capiases for certain jurors to answer for their failure to appear as alternate grand jurors, including Eva M. Spencer and Linda M. Walker. These two jurors were ultimately selected to serve as members of the Grand Jury in question. The Grand Jury Order also indicates that one juror, Teresa L. Collins, appeared late in Court, but that the Court excused her for the day in question and rescinded the capias previously issued. Teresa L. Collins was not selected as member of the Grand Jury that indicted Petitioner. Petitioner has failed to present evidence that the issuance of a capias for Eva M. Spencer and

20

Linda M. Walker would have caused these grand jurors to harbor prejudice toward Petitioner. The Grand Jury Order does not reflect the capiases were served or that the grand jurors were fined or otherwise punished.

Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## State's Evidence Used During Grand Jury Proceedings

Petitioner has also challenged the evidence presented to the Grand Jury to indict him. "The well-settled rule in West Virginia is that '[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." *State v. Spinks*, No. 15-1145, 2017 WL 2626386, at *1 (W. Va. June 16, 2017)(citing *Barker v. Fox*, 160 W.Va. 749 (1977)).

> Criminal defendants have frequently sought to challenge the validity of grand jury indictments on the ground that they are not supported by adequate or competent evidence. (citations omitted). This contention, however, often runs counter to the function of the grand jury, which is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient probable cause to require the defendant to stand trial. (citations omitted).

*State ex rel. Pinson v. Maynard*, 181 W. Va. 662 (1989). The question before this Court is whether Petitioner has made a *prima facie* case that such fraud occurred before the grand jury. Petitioner has not presented any evidence that such fraud was perpetrated by the State. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Grand Jury Transcripts, Recordings, and Polling Sheets

Petitioner also requested access to the transcripts or a recording of the February 1996 Grand Jury proceedings. Under *West Virginia Code* § 52-1-16, "[a]ll records and papers

21

compiled and maintained by the clerk in connection with selection and service of jurors from the master list, the jury box or the jury wheel shall be preserved by the clerk for *at least four years* after such jurors were selected, or for any longer period ordered by the court" (emphasis added). Thus, under *West Virginia Code* § 52-1-16, the Circuit Clerk is only required to keep such records for four years.

At the request of this Court, the Circuit Clerk searched all likely places in which such records, polling sheets, and transcripts may have been kept. No records are available. It has been 20 years since Petitioner was tried and convicted. The materials in questions are unavailable not because of any animus or prejudice towards Petitioner, but only as a result of the passage of time. Accordingly, the Court must **DENY** Petitioner's request for Grand Jury Transcripts, Recordings, and Polling Sheets.

### Petitioner's Losh List

The Court will now address the grounds asserted in Petitioner's *Losh* List.

### *Brady* Violation

Petitioner alleges a *Brady* violation. Petitioner failed to present any evidence of a *Brady* violation during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. *Brady v. Maryland* stands for the familiar proposition that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" 373 U.S. 83, 87 (1963). There is no evidence of a *Brady* violation in the record. The case file is devoid of any motions complaining about inadequate discovery. Indeed, at a pre-trial hearing held on January 15, 1997, the Court asked trial counsel whether Petitioner had any "particular discovery problems" regarding DNA related discovery requests. Petitioner's trial

22

counsel responded, "No, not at this time, your Honor." Transcript, January 15, 1997 Hearing, p. 61. Trial counsel further stated the State "has provided to us everything we've asked for." Transcript, January 15, 1997 Hearing, p. 61. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Chain of Custody Violation

Petitioner alleges a chain of custody violation. The Court presumes Petitioner is referring to the chain of custody issues associated with the State's DNA evidence. In light of the Court's discussion and disposition of such issues *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Forensic Evidence Violation under *Zain III*

Petitioner is presumably asserting his concerns with the sufficiency of the State's DNA evidence. In light of the Court's discussion and disposition of such issues *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Illegal Empaneling of Petit Jury

Petitioner asserts the petit jury in this matter was illegally empaneled. Petitioner failed to present any evidence the petit jury was somehow illegally empaneled during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. Indeed, the petit jury in question was regularly summoned for the term of court in question. There is simply no evidence of Petitioner's claims in the record. The Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Possibility of Jury Tampering

Petitioner asserts the possibility of jury tampering. Petitioner failed to present any evidence of jury tampering during the evidentiary hearing and did not file a brief in support of

23

his position, as indicated *supra*. There is no evidence of jury tampering in the record. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Introduction of Gruesome Photographs

Petitioner asserts the trial court erred by admitting gruesome photographs into evidence. Petitioner fails to identify which photographs are allegedly gruesome and makes no further argument in support of his position. The Court has reviewed the photographs admitted during Petitioner's trial and finds that there is nothing particularly gruesome about such photographs. The Court finds the presiding trial judge did not abuse his discretion when admitting the photographs. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Trial Court lacked jurisdiction in this case

Petitioner argues the Circuit Court of McDowell Court lacked jurisdiction over this matter. Under the West Virginia Constitution, "[c]ircut courts...have original and general jurisdiction of... all crimes and misdemeanors." *W. Va. Cons.* Art. VIII, § 6; *accord W. Va. Code* § 51-2-2(c) ("The circuit court shall have original and general jurisdiction in all of the following matters:...(5) Crimes; and (6) Misdemeanors.") The Court **FINDS** and **CONCLUDES** that Petitioner was charged with felonies (i.e., crimes) and that the Court's subject matter jurisdiction was obvious.

Regarding the trial court's territorial jurisdiction, the Court **FINDS** each count of the Indictment charges that Petitioner committed a crime "in the said County of McDowell." The underlying Criminal Complaint makes similar allegations. Petitioner was clearly charged with crimes that occurred in McDowell County. Accordingly, the Court finds the trial court had

24

territorial jurisdiction to adjudicate Petitioner's crimes. *Click v. Click*, 98 W. Va. 419 (1925). Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Suppression of Exculpatory (Helpful) Evidence

The Court presumes Petitioner intended to argue the State suppressed helpful evidence to his case. In light of the Court's disposition of the alleged *Brady* violations *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## State's Knowingly [sic] Use of Perjured Testimony

Petitioner asserts the State knowingly used perjured testimony. In light of the Court's discussion of the alleged perjured and misleading testimony *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## "Rushing to Judgement [sic]" Irregularities in the investigation and arrest

Petitioner's Petition argues "the State of West Virginia rushed to judgment to quell the community's outcry as to why there has been no one arrested for said crimes…" Petitioner has failed to present evidence the State lacked probable cause to arrest him. Indeed, Petitioner was arrested pursuant to a warrant dated December 1, 1995 after a magistrate found probable cause. The Court has reviewed the underlying Criminal Complaint filed December 14, 1995 and finds the Complaint alleges information sufficient to support a finding a probable cause to issue an arrest warrant. Moreover, in light of the Court's discussion regarding the evidence presented at the Grand Jury and the sufficiency of the State's evidence to sustain the conviction *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

25

### Falsification and/or Deletion of a Transcript by the Prosecution

Petitioner makes the bold assertion the State falsified and/or deleted a transcript. Petitioner fails to identify which transcript was allegedly falsified or what transcript was allegedly deleted. Petitioner failed to present any evidence of transcript falsification or deletion during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. The Court notes the transcripts of Petitioner's criminal trial were prepared by Mary Frances Begley, Official Court Reporter, rather than the McDowell County Prosecuting Attorney's Office. Petitioner makes no allegation against Ms. Begley. Petitioner has presented no evidence that transcripts were falsified or deleted by either the State or Ms. Begley. The Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

### Irregularities in the Jury Selection Phase- Voir Dire

Petitioner asserts there were irregularities in the jury selections process, but does not specifically articulate such alleged irregularities. Petitioner failed to present any evidence of irregularities in the jury selection process during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. In his previous Petition for a Writ for Habeas Corpus in McDowell County Civil Case No. 02-C-34-M, Petitioner alleged the Prosecution used a preemptory juror strike in a discriminatory manner to prevent a fair representation of the cross-section of the community. By Order entered May 16, 2002, this Court held the Prosecution had good cause for striking the prospective juror in question due to the discovery of possible personal bias of the juror during voir dire and that Petitioner's argument was without merit. Although the Court does not apply *res judicata* principles to the May 16, 2002 Order, the Court nevertheless declines to disturb its previous ruling. The Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

26

## Impartiality of the trial judge

The Court presumes Petitioner intended to argue the presiding trial judge was biased against him. Petitioner fails to articulate specific instances of how the presiding trial judge showed bias against him. Petitioner failed to present any evidence of the impartiality of the trial judge during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. The record contains no evidence of the trial judge's bias. Indeed, at a hearing held on January 15, 1997, the presiding trial judge asked if Petitioner desired a new judge if venue were to change to another county. Petitioner's trial counsel "ask[ed]" the presiding trial judge "go along if we go [to another county]." Transcript of January 15, 1997 hearing, p. 71. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Excessive Vouching of State's Witnesses by the trial judge

The Court presumes Petitioner intended to argue the presiding trial judge impermissibly bolstered the credibility of the State's witnesses. Petitioner fails to articulate specific instances where the trial judge bolstered or "excessively" vouched for the State's witnesses. Petitioner failed to present any evidence of the trial judge vouching for the State's witnesses during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. The record contains no evidence of such conduct. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## The Prosecution [sic] use of his official position to undermine/discredited [sic] the credibility of the defense witnesses

Petitioner appears to assert Sidney Bell used his official position as the McDowell County Prosecuting Attorney to undermine and discredit the credibility of Petitioner's trial witnesses. Petitioner fails to articulate the precise manner in which Mr. Bell allegedly used his

position to undermine or otherwise discredit Petitioner's witnesses. Petitioner failed to present any evidence of such conduct during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. The record contains no evidence of such conduct. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Improper Communications Between the Prosecutor, Witnesses, and/or members of the trial jurors

Petitioner asserts there were Improper Communications Between the Prosecutor, Witnesses and members of the jury. Petitioner fails to articulate when or where such communications allegedly occurred or the contents of such alleged communications. Petitioner failed to present any evidence of such conduct during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. The record contains no evidence of such conduct. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Sufficiency of the State's Evidence

Petitioner presumably asserts the State's evidence was insufficient to sustain his conviction. In light of the Court's discussion of the DNA Evidence and the Sufficiency of the State's Evidence *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Irregularities and/or Errors in the arraignment

Petitioner asserts there were irregularities and errors during his arraignment. Petitioner fails to articulate the precise nature of such alleged errors or irregularities. Petitioner failed to present any evidence of such conduct during the evidentiary hearing and did not file a brief in support of his position, as indicated *supra*. The record contains no evidence of such conduct.

28

Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

### Challenges in the Composition of the Grand Jury and its procedures

Petitioner challenges the composition and procedures of the Grand Jury which indicted him. In light of the Court's discussion of the alleged Grand Jury prejudice, the State's Evidence Used During the Grand Jury Proceedings and the Grand Jury Transcripts, Recordings, and Polling Sheets *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

### Defects in the Indictment

Petitioner argues there are defects in the Indictment. Petitioner fails to articulate the precise nature of the alleged defects. The Court has examined the Indictment and finds there are no defects to the Indictment on its face. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

### Improper Venue

Petitioner appears to argue his trial should not have been held in McDowell County. The Court presumes Petitioner intended to argue the presiding trial judge erred in denying his Motion for a Change of Venue.

> To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.

*State v. Derr*, 192 W. Va. 165, 171–72 (1994)(*citing State v. Sette*, 161 W.Va. 384 (1978)(*quoting* Syl. Pt. 2, *State v. Woodridge*, 129 W. Va. 448 (1946)). The record reflects a

29

public opinion survey of potential McDowell County jurors was conducted at the State's expense by Don Richardson. Mr. Richardson testified during a January 15, 1997 hearing 80% of the approximately 200 people he contracted had heard of Petitioner's case and that 63% of those persons could presume Petitioner was innocent. Transcript of January 15, 1997 hearing, pp. 22-24. 58% of the persons surveyed believed Petitioner could get a fair trial in McDowell County. Transcript of January 15, 1997 hearing, p. 24. Mr. Richardson testified in his expert opinion, there was a hostile sentiment against Petitioner in McDowell County and that he was very doubtful Petitioner could receive a fair trial in the county. Transcript of January 15, 1997 hearing, p. 29.

On January 30, 1997, the presiding trial judge entered an order denying Petitioner's Motion for a Change of Venue. The order relies heavily on *Derr*. Indeed, the order indicates:

> This Court finds that this case is rather similar to the Derr case, supra, in that there was initially considerable publicity about the case, but, since then, media coverage of the case has "died down" and there is insufficient evidence under the totality of the circumstances to warrant a change of venue and there has not been evidence at all presented to show that the majority of potential jurors and the people of this County harbor negative "fixed opinions" against defendant David Dixon.

Order Denying Change of Venue, p. 5. The record reflects the presiding trial judge allowed liberal voir dire questioning of potential jurors over a two day period. Trial Transcript, April 2, 1997, p. 158. All of Petitioner's Motions to strike for cause were granted. Trial Transcript, April 2, 1997, p. 159. Petitioner had no objection to the panel of 20 prospective jurors. Trial Transcript, April 2, 1997, p. 80. Petitioner further had no objection to the qualifications of the five prospective alternate jurors. Trial Transcript, April 2, 1997, pp. 156-57. All jurors ultimately chosen stated they could put aside any information they had been exposed to in the past and decide Petitioner's case on the law and evidence presented alone. In light of the foregoing, the

30

Court cannot find the presiding trial judge abused his discretion in denying Petitioner's Motion for a Change of Venue. Indeed, United States District Court Judge David A. Faber made a similar finding in Petitioner's § 2254 federal habeas action by Judgment Order entered March 5, 2004 in Civil Action No. 1:03-0376. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Refusal to Grant a Continuance

Petitioner appears to assert the presiding trial judge erred in refusing to grant a continuance. "The granting of a continuance is a matter within the sound discretion of the trial court . . . and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made." *State v. Bush*, 163 W. Va. 168, 177–78 (1979) (*citing* Syl. Pt. 1, *State v. Jones*, 84 W.Va. 85 (1919)). Petitioner does not articulate when the presiding trial judge allegedly refused to grant a continuance. The record reflects Petitioner's trial was rescheduled by Order dated January 24, 1997 per Petitioner's request. The record further reflects Petitioner's trial was rescheduled by Order dated October 10, 1996. Petitioner's case was also continued by Order entered March 11, 1996. Moreover, Petitioner's time to appeal his conviction was extended by Order entered August 11, 1997. The Court is unable to find an instance whether the presiding trial judge failed to grant a continuance. Accordingly, the Court cannot conclude the presiding trial judge abused his discretion in refusing a continuance. Therefore, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

31

## Nondisclosure of Grand Jury Minutes

Petitioner presumably seeks the production of the transcripts from the Grand Jury that returned the Indictment against him. In light of the Court's discussion of the alleged Grand Jury prejudice, the State's Evidence Used During the Grand Jury Proceedings and the Grand Jury Transcripts, Recordings, and Polling Sheets *supra*, the Court must **DENY** this ground for relief.

## Constitutional Errors in Evidentiary Rulings

Petitioner presumably asserts the presiding trial judge violated Petitioner's constitutional rights by making certain evidentiary rulings. Petitioner fails to identify which evidentiary rulings were allegedly in error, or how such alleged errors affected his constitutional rights. The Court presumes Petitioner intended to argue the presiding trial judge erred in allowing the State's DNA evidence to be admitted during his trial. "The decision to admit or reject expert evidence is committed to the sound discretion of a trial court, and the court's determinations are reviewable only for abuse of discretion." *State v. LaRock*, 196 W. Va. 294, 306 (1996). Indeed, appellate courts give trial judges a wide berth of respect with regards to these kinds of discretionary judgments. *LaRock*, 196 W. Va. at 306. It is difficult for the Court to decipher the essence of Petitioner's argument given its vagueness and conclusory nature. The Court finds the record contains no plain errors in the presiding trial judge's evidentiary rulings that would amount to an abuse of discretion. The Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Alteration of the Indictment after Grand Jury Returned an Indictment

Petitioner presumably asserts the Indictment was impermissibly altered by the presiding trial judge when he delivered the Jury Instructions and Charge. As indicated by the Court's discussion *supra*, the presiding trial judge properly added the lesser included offense of attempt

32

to the jury instructions for purposes of felony murder, sexual assault in the first degree and abduction of a person. This did not amount to an alteration of the Indictment. Accordingly, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Instructions to the Jury

Petitioner presumably asserts the presiding trial judge gave erroneous instructions to the jury. The Court presumes Petitioner is reiterating his claims regarding the presiding trial judge altering the Indictment. In light of the Court's discussion and disposition of such claims *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Prejudicial Statements made by the Prosecutor during his Closing Argument

Petitioner asserts the Prosecutor made inappropriate comments during his closing argument. In light of the Court's discussion of the Prosecutor's Alleged Improper Comments and Conduct *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Trial Judge Making An Unprecedent [sic] Statement Outside of the Jury Presence

Petitioner argues the presiding trial judge made an inappropriate statement outside the presence of the jury. Petitioner fails to articulate the contents of such statement or pinpoint when such statement allegedly occurred. Petitioner did not present any evidence of the presiding trial judge's alleged inappropriate statement during the evidentiary hearing and did not file a brief in support of his position. The Court finds the record contains no plain errors as to the presiding trial judge's statements. The Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

33

## Violation of the Sequestration Order by the trial judge and the Prosecutor

Petitioner asserts the Prosecutor and the presiding trial judge violated the presiding trial judge's sequestration order. Petitioner fails to pinpoint *when* the Prosecutor allegedly violated the presiding trial judge's sequestration order or *how* the Prosecutor allegedly violated the sequestration order. Petitioner presented no evidence of a violation of the trial court's sequestration order during the evidentiary hearing and did not file a brief in support of his position. The Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Shifting the Burden of Proof by the Prosecutor on Several Elements of the Crime Charged

The Court presumes Petitioner is reasserting his claims regarding the Prosecutor's closing argument. In light of the Court's discussion of the Prosecutor's Alleged Improper Comments and Conduct *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Prosecutor Commenting on Petitioner's Silence During Trial

The Court presumes Petitioner is reiterating his claims regarding the Prosecutor's closing argument. In light of the Court's discussion of the Prosecutor's Alleged Improper Comments and Conduct *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

## Trial Judge Taking on the role/favoring the prosecution

The Court presumes Petitioner is reasserting his claim the trial judge was biased against him. In light of the Court's discussion of Impartiality of the trial judge *supra*, the Court **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

34

Based on all of the forgoing, it is **ADJUDGED** and **ORDERED** that Petitioner's Petition for a Writ of Habeas Corpus should be and is hereby **DENIED AND DISMISSED WITH PREJUDICE**. Petitioner's *Motion to Unseal McDowell County Grand Jury Files to Obtain Grand Jury Polling Sheets* and *Pre-trial Motion for Default Judgment* are also accordingly **DENIED**. Petitioner's objections and exceptions to this Order are noted and preserved. This is a Final Order. The Clerk is directed to remove this matter from the Court's active docket. The Clerk is further directed to forward an attested copy of this Order to Petitioner David Lawrence Dixon, Prisoner # 3570828, Oak Hill-147, Mount Olive Correctional Complex, One Mountainside Way, Mount Olive, West Virginia 25185 and the McDowell County Prosecuting Attorney.

**ENTERED** this 18th day of January, 2018.

Rudolph J. Murensky, II, Judge

IN THE CIRCUIT COURT OF MCDOWELL COUNTY, WEST VIRGINIA

RECEIVED

MAY 3 ~ 2018

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA, Ex Rel.,
DAVID LAWRENCE DIXON, PRO SE,
    **Petitioner,**

v.
                                      Civil Action No.: 05-C-93

                                               Formerly Felony No. 96-F-13

DAVID BALLARD, WARDEN
MOUNT OLIVE CORRECTIONAL COMPLEX,
                                  Judge Murensky
    **Respondent.**

## SUPPLEMENTAL ORDER FOLLOWING COMPREHENSIVE ORDER DENYING WRIT OF HABEAS CORPUS FOLLOWING OMNIBUS EVIDENTIARY HEARING

On the 23rd day of March, 2017, came Petitioner, in person, *pro se*, and also came Respondent by Emily K. Miller, Assistant Prosecuting Attorney for McDowell County, West Virginia, for an omnibus evidentiary hearing on the merits of Petitioner's Petition for a Writ of Habeas Corpus. This Court entered a Comprehensive Order denying Petitioner's Petition on January 18, 2018. On February 9, 2018, Petitioner filed a Notice of Intent to Appeal this Court's Comprehensive Order.

In his habeas action, Petitioner requested access to the polling sheets and the recordings or transcripts of the February 1996 Term of the Grand Jury for McDowell County. The Court's Comprehensive Order denied Petitioner's request, finding under *West Virginia Code* § 52-1-16, the Circuit Clerk is only required to keep such records for four years. The Court further found the Circuit Clerk, at this Court's request, searched all likely places in which such records, polling sheets and transcripts may have been kept. No records were available. Petitioner's Notice of Intent to Appeal indicates this Court erred "in not providing to Petitioner all the material requested in his pre-trial motion for Discovery…"

**SUPPLEMENTAL APPENDIX - 18: 0097**
Page 1

By prior Order entered February 15, 2018, this Court informed the parties that tapes and court reporter notes of the February 1996 Term of the Grand Jury for McDowell County, West Virginia had been discovered in a box in the court reporter's office of Circuit Court "A"[1] and that the tapes may have never been transcribed. The Court entered an Order for Grand Jury Transcript on February 15, 2018 directing Carolyn R. DiLorenzo, Court Reporter, to prepare an original transcript and two copies of the Grand Jury testimony against David Lawrence Dixon in McDowell County Felony No. 96-F-13 within thirty (30) days of the entry of the Order for Grand Jury Transcript and to deliver the original transcript and the copies to the Circuit Clerk. The Order for Grand Jury Transcript further directed the Circuit Clerk to distribute the copies of the transcript to Petitioner and the McDowell County Prosecuting Attorney.

The Court's February 15, 2018 Order further informed the parties the Court intended to enter a subsequent Order providing Petitioner and the McDowell County Prosecuting Attorney the opportunity to file with the Circuit Clerk memoranda demonstrating if the Court should modify its Comprehensive Order given these circumstances.

The West Virginia Supreme Court of Appeals, by Order entered February 26, 2018, placed Petitioner's appeal in abeyance and remanded this matter to this Court to proceed in accordance with this Court's February 15, 2018 Order directing preparation of the grand jury transcripts and briefing related thereto.

By prior Order entered February 28, 2018, the Court **FOUND** Ms. DiLorenzo, Court Reporter of the Court, had discharged her duties under the Court's Order for Grand Jury Transcript entered February 15, 2018. The Court's February 28, 2018 Order further gave Petitioner and the McDowell County Prosecuting Attorney leave to file with the Circuit Clerk memoranda

---

[1] This case is pending in Circuit Court "B."

demonstrating if the Court should modify its Comprehensive Order by April 2, 2018. On March 26, 2018, Petitioner filed a *pro se* "Brief in Lieu of Appeal", which was duly served on the State. The State did not file a response to the Brief in Lieu of Appeal, or any additional memoranda demonstrating if the Court should modify its Comprehensive Order.

Petitioner's Brief in Lieu of Appeal argues, *inter alia*, the Court failed to conduct an omnibus evidentiary hearing on the merits of Petitioner's Petition for a Writ of Habeas Corpus, which the Court **FINDS** to be entirely without merit. See generally, Comprehensive Order Denying Writ of Habeas Corpus following Omnibus Evidentiary Hearing entered January 18, 2018; Transcript of the March 23, 2017 Omnibus Evidentiary Hearing.

The Brief in Lieu of Appeal further argues "[t]he Grand Jury Transcripts that was [sic] received from Ms. Carolyn R. DiLorenzo appears to be incomplete, meaning, there should be more than just (13) pages of rehearsed dialog, and should Petitioner subscribe to the belief that the Grand Jury Transcripts are indeed **true and accurate**, then there is a [sic] very notable errors with the testimony of Trooper Cochran that must be addressed" (emphasis in the original). The Brief in Lieu of Appeal argues "[i]t is highly unlikely Trooper Cochran received from New Jersey any of Petitioner's juvenile records, because, well, Petitioner was a juvenile, and New Jersey doesn't strike me as the type of State that just deals out this type of information..."[2]

The Court **FINDS** Petitioner is only entitled to a transcript of the testimony used against Petitioner by the State in McDowell County Felony No. 96-F-13 during the February 1996 Term of the Grand Jury for McDowell County, West Virginia, not the *entire* transcript of the February 1996 regular Term of the Grand Jury, which would contain testimony used in other cases that are

---

[2] *N.J. Stat.* § 2A:4A-26 appears to be similar to *West Virginia Code* § 49-4-710, which requires that juvenile proceedings be transferred to the criminal jurisdiction of the court if the juvenile was fourteen years of age and there is probable cause to believe the juvenile has committed the crime of kidnapping or sexual assault.

completely unrelated and irrelevant to Petitioner's underlying criminal matter. A copy of the grand jury testimony is attached to this order. The grand jury that indicted Petitioner was not convened solely to indict him. Indeed, the grand jury in question was convened for the regular term of court in February 1996 and Petitioner was only one of nineteen people indicted during that term of court. Petitioner has received the entirely of the State's evidence used to indict him.

The transcript of the testimony used against Petitioner by the State during the February 1996 Term of the Grand Jury reveals the State called Trooper B. K. Cochran, who testified he was assigned to investigate the apparent murder of the victim, Bertha Hodge. Trooper Cochran testified the victim's body was found in a freezer inside the victim's residence. Trooper Cochran testified the victim lived with her elderly mother in a company-type double house, where one family lived on one side of the house and another family lived on the other side. Trooper Cochran testified Petitioner, his brother Timothy Dixon and Petitioner's mother, Thelma Dixon lived in the other half of the company-type house at issue. Trooper Cochran testified Petitioner moved into the home approximately three months prior to the victim's murder.

Trooper Cochran testified the victim had a habit of walking in the early morning hours and then returning to her home, but when the victim was not seen for a period of time, a search party was formed. Trooper Cochran testified Reverend Roger Walton discovered the victim's body under bags of frozen food in the freezer after he observed some of the victim's clothing near the freezer.

Trooper Cochran testified the victim, a widow in her late seventies, was found lying face down on her stomach with no clothing on her body, except for her bra. Trooper Cochran testified the victim's body was sent to the state medical examiner's office for an autopsy, which determined Ms. Hodge was the victim of a homicide. Trooper Cochran testified the state medical examiner

located sperm and semen inside of the victim's anus and that such samples were taken to the state police crime lab for analysis.

Trooper Cochran testified during his investigation he discovered Petitioner had just been released from the penitentiary in New Jersey after serving about 13 years for sexual assault and abduction and attempted murder. Trooper Cochran testified there were certain similarities between the crimes committed against Bertha Hodge and Petitioner's previous New Jersey crimes. In the New Jersey case, Trooper Cochran testified Petitioner abducted a female, took her to his residence and tied her up with some kind of tying device. Trooper Cochran testified Ms. Hodge was found with her feet duct-taped together and that there was evidence that Ms. Hodge's hands had been duct taped together and that duct tape had been placed around her mouth and on her head. Trooper Cochran testified another similarity between the crimes against Ms. Hodge and Petitioner's New Jersey crimes were that both victims were raped anally. Trooper Cochran testified Petitioner attempted to kill his New Jersey victim, but that Petitioner was unsuccessful.

Trooper Cochran testified he obtained a blood sample from Petitioner and his brother Timothy Dixon for a DNA comparison between their blood samples and the physical evidence obtained from Ms. Hodge's body. Trooper Cochran testified a chemist at the state police crime lab compared the blood samples obtained from Petitioner's brother Timothy Dixon to the physical evidence obtained from Ms. Hodge's body and excluded Timothy Dixon from being a suspect. Trooper Cochran testified the blood samples taken from Petitioner were a match to the physical evidence obtained from Ms. Hodge's body and that the chemist at the state crime lab believed the results were very strong.

Trooper Cochran testified Petitioner did not have much reaction when Trooper Cochran confronted Petitioner about the DNA results and that it did not appear to bother Petitioner to be

listed as a suspect for the crimes against Ms. Hodge. Trooper Cochran testified Petitioner appeared to know more about the crimes against Ms. Hodge than Trooper Cochran did at the time of Trooper Cochran's initial questioning of Petitioner on the day of the murder in that Petitioner knew Ms. Hodge had been sexually assaulted before the trooper knew. Trooper Cochran testified he interviewed witnesses who observed a black man standing outside of Ms. Hodge's residence. Trooper Cochran testified one witness could describe a black man in a white or grayish-type tank top and that another witness could identify Petitioner later that morning wearing a white or grayish tank top. No grand jurors opted to question Trooper Cochran further and a True Indictment was returned.

The Brief in Lieu of Appeal argues Trooper Cochran could not have known about the contents of the DNA Forensic Report inasmuch as such report was issued subsequent to Petitioner being indicted. During Petitioner's underlying criminal trial, Trooper Darren Francis testified he received known blood samples from Petitioner and Petitioner's brother Timothy Dixon on August 21, 1995. Trial Transcript, April 3, 1997, p. 220. Trooper Francis testified the next day on August 22, 1995, he prepared blood stains of the known blood samples from Petitioner and Timothy Dixon. Trial Transcript, April 3, 1997, p. 221. Trooper Francis further testified he received the physical evidence obtained from the body of the victim on August 21, 1995 and made a blood stain of same. Trial Transcript, April 3, 1997, pp. 223-25. Trooper Francis testified he submitted a preliminary report to Trooper Cochran on September 1, 1995 following preliminary testing of the evidence. Trial Transcript, April 3, 1997, p. 228.

Trooper Francis testified he started the DNA comparison testing process on October 16, 1995 and that he finished the process in *approximately* March 1996. Trial Transcript, April 3, 1997, p. 236. The State presented its case against Petitioner to the February 1996 term of the Grand

Jury on February 28, 1996, approximately March 1996. Trooper Francis testified he was able to exclude Timothy Dixon early on in the DNA testing process.[3] Trial Transcript, April 3, 1997, p. 237.

Although Trooper Francis's final report may not have been issued until April 1996, it is consistent with procedures in other cases that Trooper Francis shared his findings with Trooper Cochran informally for the purposes of Trooper Cochran's grand jury testimony, given the close proximity in time to Trooper Cochran's testimony and the time Trooper Francis completed the DNA testing. Indeed, Trooper Cochran testified with sufficient detail regarding the DNA results before the grand jury. In this Court's experience, it is not unusual for the State to use preliminary findings of lab results to present to the grand jury.

In any event, "[t]he well-settled rule in West Virginia is that '[e]xcept for *willful, intentional fraud* the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." *State v. Spinks*, No. 15-1145, 2017 WL 2626386, at *1 (W. Va. June 16, 2017)(citing *Barker v. Fox*, 160 W.Va. 749 (1977))(emphasis added). "The mere fact that some illegal or improper evidence has been received before the grand jury...will not invalidate an indictment where other legal evidence was received in its support." *State v. Clark*, 64 W. Va. 625 (1908). Hearsay and other evidence not necessarily admissible at trial may be utilized during Grand Jury proceedings. Indeed,

> [c]riminal defendants have frequently sought to challenge the validity of grand jury indictments on the ground that they are not supported by adequate or competent evidence. (citations omitted). This contention, however, often runs counter to the function of the grand jury, which is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient *probable cause* to require the defendant to stand trial. (citations omitted)(emphasis added).

---

[3] The victim, Petitioner and Petitioner's brother, Timothy Dixon are all African Americans.

*State ex rel. Pinson v. Maynard*, 181 W. Va. 662 (1989). The question before this Court remains whether Petitioner has made a *prima facie* case that *fraud* occurred before the grand jury.

The Court **FINDS** Petitioner has again failed to present evidence that fraud was perpetrated by the State. There appears to have been more than enough evidence to support the grand jury's finding of probable cause. The State's evidence at the grand jury consisted of Trooper Cochran's testimony, which shows in addition to the matching DNA evidence, Petitioner lived next door to the victim; an individual of a similar build and general description of Petitioner was seen near the victim's residence on the day of the offense; the victim never returned from her morning walk; Petitioner did not appear to be particularly concerned about being listed as a suspect for the crimes committed against the victim; and that Petitioner appeared to know more about the crimes committed against the victim than Trooper Cochran did at the time of the initial interview on the day of the murder. The grand jurors clearly found Trooper Cochran's testimony to be credible.

The grand jury's finding of probable cause is confirmed by the unanimous guilty jury verdict in Petitioner's criminal trial, requiring the State to prove every element of the offenses charged beyond a reasonable doubt. The State's reasonable doubt burden of proof in a criminal trial is a far higher standard than a mere finding of probable cause by a grand jury. Therefore, the Court once again **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

Contrary to Petitioner's assertions, this Court never ordered, directed or otherwise instructed the Circuit Clerk's Office to withhold from Petitioner the Grand Jury Order. As previously found by this Court in its Comprehensive Order, the Grand Jury Order shows the presiding trial judge issued capiases for certain jurors to answer for their failure to appear as alternate grand jurors, including Eva M. Spencer and Linda M. Walker. These two jurors were

ultimately selected to serve as members of the Grand Jury in question. The Grand Jury Order also indicates that one juror, Teresa L. Collins, appeared *late* in Court, but that the Court excused her for the day in question and rescinded the capias previously issued. Teresa L. Collins was not selected as member of the Grand Jury that indicted Petitioner.

Petitioner has once again failed to present evidence that the issuance of a capias for Eva M. Spencer and Linda M. Walker would have caused these grand jurors to harbor prejudice toward Petitioner. The Grand Jury Order does not reflect the capiases were served or that the grand jurors were fined or otherwise punished. Additionally, this particular grand jury was not convened solely to indict Petitioner. Therefore, the Court once again **FINDS** and **CONCLUDES** Petitioner has failed to meet his burden of proof as to this ground.

Petitioner's Brief in Lieu of Appeal appears to once again to challenge the sufficiency of the State's evidence to sustain Petitioner's conviction and argues the State rushed to judgment in this matter. The Brief in Lieu of Appeal appears to further reassert the presiding trial judge erred in denying Petitioner's Motion for a Change of Venue. The Brief in Lieu of Appeal further asserts Petitioner was not indicted with attempt to commit sexual assault or attempt to commit abduction. Petitioner once again argues the trial judge's instruction added additional offenses that amounted to amending the indictment. Petitioner's Brief in Lieu of Appeal further complains about this Court's delay in reaching a final decision on the merits of this matter.

The Court **FINDS** the sufficiency of the State's evidence to sustain Petitioner's conviction and the State's alleged "rush to judgment" in this matter was addressed in the Court's Comprehensive Order. The Court further addressed the presiding trial judge's denial of Petitioner's Motion for a Change of Venue and the presiding trial judge's alleged "alteration" to the Indictment in its Comprehensive Order. The Court declines to modify its previous rulings on these issues.

The Court **FINDS** the Court's delay in issuing a decision on the merits in this matter was caused by Petitioner. Indeed, Petitioner filed the instant habeas corpus petition on April 8, 2005, which was denied by this Court by order entered May 11, 2005 after conducting an initial review. Subsequently, the West Virginia Supreme Court remanded the matter back to this Court for the appointment of counsel and to conduct an omnibus evidentiary hearing by order entered November 29, 2005. This Court appointed the first of several competent and licensed attorneys to represent Petitioner by order entered December 21, 2005. Since this matter was remanded to this Court, three different attorneys have been appointed to represent Petitioner. Each attorney has been permitted to withdraw at the request of Petitioner. The Court ultimately allowed Petitioner to proceed *pro se* pursuant to Petitioner's request by order entered March 29, 2016. An evidentiary hearing was scheduled for March 23, 2017 by order entered on December 28, 2016.

At the conclusion of the March 23, 2017 omnibus evidentiary hearing, the Court informed the parties that it would like to receive briefs in support of their positions. The Court initially gave Petitioner sixty days to file a brief, but such deadline was extended pursuant to Petitioner's request. Petitioner was given seventy-five (75) days to file his brief. Respondent was given time to respond and Petitioner in turn was given additional time to respond to Respondent's brief. Petitioner did not file a file a brief, but rather filed a *Motion to Unseal McDowell County Grand Jury Files to Obtain Grand Jury Polling Sheets* on May 3, 2017 and *a Pre-trial Motion for Default Judgment* on June 12, 2017. The *Motion to Unseal McDowell County Grand Jury Files to Obtain Grand Jury Polling Sheets* and *Pre-trial Motion for Default Judgment* were not properly before the Court, as they were filed after the evidentiary hearing on the merits of Petitioner's petition and therefore inconsistent with the status of this case. Nevertheless, Petitioner's Motions required this Court and the Circuit Clerk's Office to expend a great amount of time in locating the requested information.

The Court entered its Comprehensive Order on January 18, 2018. The recent discovery of tapes and court reporter notes of the February 1996 Term of the Grand Jury for McDowell County, West Virginia has further delayed final resolution of this matter.

Based on all of the forgoing, the Court **DECLINES** to modify, alter or amend its Comprehensive Order entered January 18, 2018. It is once again **ADJUDGED** and **ORDERED** that Petitioner's Petition for a Writ of Habeas Corpus should be and is hereby **DENIED AND DISMISSED WITH PREJUDICE**. Petitioner's *Motion to Unseal McDowell County Grand Jury Files to Obtain Grand Jury Polling Sheets* is hereby **DENIED as moot** and Petitioner's *Pre-trial Motion for Default Judgment* is also accordingly **DENIED**. Petitioner's Motion for Summary Judgment is further **DENIED**. Petitioner's objections and exceptions to this Order are noted and preserved. This is a **FINAL ORDER**.

The Clerk is directed to remove this matter from the Court's active docket. The Circuit Clerk is directed to forward an attested copy of this Order to: (1) Petitioner David Lawrence Dixon, Prisoner # 3570828, Staurt Hall-147, Mount Olive Correctional Complex, One Mountainside Way, Mount Olive, West Virginia 25185; (2) the McDowell County Prosecuting Attorney; and (3) The Honorable Edythe Nash Gaiser, Clerk, West Virginia Supreme Court of Appeals, 1900 Kanawha Blvd., E., State Capitol, Room E-317, Charleston, WV 25305.

**ENTERED** this 16th day of April, 2018.

Rudolph J. Murensky, II, Judge

TRUE COPY TESTE
ANGINE SPENCER CLERK